IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH F. WALTERS, JR., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. 08-1458 |
| | ) | |
| NAKATA ENGINEERING CO., LTD, | ) | Judge Conti |
| DABSCO EQUIPMENT t/d/b/a D.A. BUIE | ) | Magistrate Judge Mitchell |
| EQUIPMENT SALES CO., and D.A. | ) | |
| BUIE, | ) | |
| individually, | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

I.  Recommendation

It is respectfully recommended that the motion to dismiss for lack of personal jurisdiction, submitted on behalf of Defendant Nakata Engineering Co., Ltd. (Docket No. 8), be granted.

II. Report

Plaintiff, Joseph F. Walters, Jr., filed this action against Defendants, Nakata Engineering Co., Ltd. ("Nakata"), Dabsco Equipment t/d/b/a D.A. Buie Equipment Sales Co. and D.A. Buie, individually, arising out of injuries he suffered while operating a Kobe Uni-Drive Two Horizontal Mixing Mill that was designed, manufactured, marketed, sold or distributed by Defendants.

Presently before this Court for disposition is a motion to dismiss for lack of personal jurisdiction, brought by Nakata, a foreign corporation with its principal place of business in Japan. For the reasons that follow, the Court should conclude that Plaintiff has failed to establish that personal jurisdiction may be asserted over Nakata. Therefore, Nakata's motion to dismiss

should be granted.[1]

Facts

On October 24, 2006, Plaintiff was operating a Kobe Uni-Drive Two Horizontal Mixing Mill (the "mixing mill") while in the course and scope of his employment with Mt. Morris Tire Service, Inc., in Mt. Morris, Greene County, Pennsylvania. He was adding unmixed rubber to the mixing mill when his left hand and wrist were pulled into the mixing rolls and severely crushed, whereupon he sustained serious injuries, some or all of which may be permanent. He alleges that he was operating the mixing mill in the manner Defendants intended and that he condition of the mill was not substantially changed from its condition when designed, manufactured, marketed, packaged and sold by Defendants. (Compl. ¶¶ 6-8, 10-12.)

Procedural History

Plaintiff filed this action on October 15, 2008. Jurisdiction is based on diversity of citizenship because Plaintiff is a Pennsylvania citizen; Nakata is a foreign corporation with a principal place of business in Kobe, Japan; Dabsco is a corporation which maintains a place of business in Clarksville, Tennessee; Buie is a citizen of Tennessee; and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (Compl. ¶¶ 1-5.) Count I alleges that Defendants were negligent in their design, manufacture, marketing, selling and distribution of the mixing mill and that they failed to provide proper or adequate warnings that it could suddenly pull fingers, hands and upper limbs into the mixing mill. Count II alleges a claim of strict

---

[1] Dabsco and Buie have filed a motion to dismiss (Docket No. 21), indicating that they had no involvement in the events underlying this action and that Plaintiff consents to dismissing them from the case. On May 11, 2009, Judge Conti entered an order granting this motion. Therefore, Nakata remains as the only defendant in this case.

liability under Section 402A of the Restatement (Second) of Torts. Count III alleges a claim of breach of warranty.

On February 13, 2009, Nakata filed a motion to dismiss for lack of personal jurisdiction. It contends that the Court lacks personal jurisdiction over it because it does not regularly conduct business in the Commonwealth of Pennsylvania and because Plaintiff cannot show that his cause of action arose from Nakata's activities in Pennsylvania. Plaintiff requested and was permitted to engage in jurisdictional discovery and the motion is now ripe for disposition.

Personal Jurisdiction

"Once it is challenged, the burden rests upon the plaintiff to establish personal jurisdiction. A nexus between the defendant, the forum and the litigation is the essential foundation of *in personam* jurisdiction." General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citation omitted). "The plaintiff must sustain its burden of proof through 'sworn affidavits or other competent evidence.'" North Penn Gas v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984)). The court initially must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff," although it can reconsider the issue "if it appears that the facts alleged to support jurisdiction are in dispute," and can conduct an evidentiary hearing to resolve any disputed facts. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142, n.1 (3d Cir. 1992). See also Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

There are two alternative ways to establish personal jurisdiction. "General personal jurisdiction exists when the defendant's contacts with the forum, whether or not related to the

3

litigation, are 'continuous and systematic.'" BP Chemicals, Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (quoting Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 416 (1984)). Specific personal jurisdiction, on the other hand, arises from a defendant's forum-related activities and may be established even where the defendant has not physically appeared in the state but has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) (citations omitted).

As recently summarized by the Court of Appeals:

> The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have "purposefully directed [its] activities" at the forum. Second, the litigation must "arise out of or relate to" at least one of those activities. Helicopteros, 466 U.S. at 414, 104 S.Ct. 1868; Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"

O'Connor v. Shady Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (quoting Burger King, 471 U.S. at 472, 476) (footnote omitted).

The Federal Rules of Civil Procedure authorize a district court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the district court sits. Fed.R.Civ.P. 4(k)(1)(A). O'Connor, 496 F.3d at 316. Pennsylvania authorizes its courts to exercise maximum general and specific jurisdiction over corporations. First, the plaintiff may show general jurisdiction pursuant to 42 Pa. C.S. § 5301(a)(2)(iii) by showing "[t]he carrying on of a continuous and systematic part of the general business within this Commonwealth." Second, the plaintiff may show specific jurisdiction pursuant to Pennsylvania's long arm statute, 42 Pa. C.S. § 5322(a) by showing that defendant has engaged in forum-related

4

activities, including "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth," § 5322(a)(4).

Pennsylvania also authorizes exercise of the jurisdiction of its courts over non-residents "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). See Kubik v. Letteri, 614 A.2d 1110, 1114 (Pa. 1992) (following Burger King analysis).

General Personal Jurisdiction

The Supreme Court decision in Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408 (1984), is instructive as to whether the contacts of the foreign defendant are sufficient to confer general personal jurisdiction in this case. In Helicopteros, the contacts of Helicol, a Colombian corporation, with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York and Florida bank accounts checks drawn on a Houston bank; purchasing approximately 80% of its fleet of helicopters as well as spare parts and accessories for more than $4 million from Bell Helicopter Company in Texas; and sending pilots and maintenance personnel to Bell's facilities in Texas for training and to ferry the aircraft to South America. Id. at 410-11. The Supreme Court noted that there had been no other business contacts between Helicol and Texas; Helicol had never been authorized to do business in Texas and had never had an agent for the service of process within the State; it had never performed helicopter operations in Texas or sold any product that reached Texas; it had never solicited business in Texas, signed any contract in Texas, had an employee based in Texas, recruited an employee in Texas, owned any real or personal property in Texas, or maintained an

5

office or establishment there; and Helicol maintained no records in Texas and had no shareholders in the State.

In addition, none of the respondents or their decedents were domiciled in Texas. Id. at 411-12. The Supreme Court determined that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." Id. at 418. The Court further found the fact that the defendant had sent personnel into Texas for training in connection with the purchase of helicopters and equipment in Texas did not in any way enhance the nature of Helicol's contacts with the State. Id.

Thus, Helicopteros sets a high standard that must be met to justify the exercise of general personal jurisdiction. Provident Nat'l Bank v. California Fed. Savs. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). See also Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 787 (7th Cir. 2003) ("the constitutional requirement for general jurisdiction is considerably more stringent than that required for specific jurisdiction."); United States v. Swiss American Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997).

With respect to the issue of Nakata's contacts with Pennsylvania in general, Hiroshi Sakurai, Manager of Administration Department for Nakata (Sakurai Aff. ¶¶ 1-2),[2] states that:

> Nakata Engineering Co., Ltd. is located at 619, Minami Kando-Cho, Nishi-Ku, Kobe 651-231, Japan.
>
> In 1992 the company now known as Nakata Engineering Co., Ltd., then Nakata Zoki Co., Ltd., acquired 53.5% of the ownership of Kobe Machinery Co.,

---

[2] Mot. Dismiss (Docket No. 8) Ex. A.

Ltd., a separate company that was located in Japan.

In 1993 Nakata Zoki acquired an additional 20% interest in Kobe Machinery Co. In 1996 Kobe Machinery was merged into Nakata Zoki and the corporate name was changed to Nakata Engineering Co., Ltd.

Nakata Engineering's focus is on products serving the rubber industry, and it sells such products to companies in Europe and the Middle East as well as North America and Asia.

Nakata Engineering sells products in the United States both directly, and indirectly, through, as of 1999, a Sales Alliance Agreement with Wyko Tire Technology, Ltd., whose United States office is located in Tennessee.

The only sales Nakata Engineering has made directly to a company located in Pennsylvania in the last 10 years are parts for a Kneader, sold to West Pharmaceutical Services located 101 Gordon Drive, Lionville, Pennsylvania 19341-0645, USA.

Nakata's total sales in the United States and Pennsylvania since 2000, in dollar amounts, are as follows:

|      | U.S.        | PA        |
|------|-------------|-----------|
| 2000 | $525,000    | -0-       |
| 2001 | $460,000    | -0-       |
| 2002 | $436,000    | -0-       |
| 2003 | $516,000    | -0-       |
| 2004 | $2,024,000  | $241,000  |
| 2005 | $2,866,000  | -0-       |
| 2006 | $787,000    | $230,000  |
| 2007 | $2,248,000  | -0-       |
| 2008 | $3,792,000  | $103,000  |

\*\*\*

Nakata Engineering has no assets or property in Pennsylvania, does not maintain a place of business in Pennsylvania and does not pay taxes in

Pennsylvania.

> Under its agreement with Wyko Tire, Nakata products are priced and sold "ex works", Kobe, Japan.

(Sakurai Aff. ¶¶ 4-10, 18-19.) Nakata explains that products sold "ex works" are delivered at the seller's place of business, that is, in Japan. (Def.'s Br. at 5.)[3] See Simeone ex rel. estate of Simeone v. Bombardier-Rotax, GmbH, 360 F. Supp. 2d 665, 671 (E.D. Pa. 2005) (explaining the meaning of "ex works").

Plaintiff has not submitted any affidavits to contest this testimony. He argues that:

> Nakata cannot argue that it has had no contact with Pennsylvania since its own affidavit references sales in Pennsylvania of $241,000 in 2004, $230,000 in 2006 and $103,000 in 2008. When compared to total U.S. sales in 2004, 11.9% of Nakata's business in the U.S. took place in Pennsylvania; in 2006 it was 29.2%; and in 2008 it was 2.7%.

(Pl.'s Br. Opp'n at 4.)[4]

When a corporation makes a small percentage of its sales in the forum state, that fact weighs against concluding that the corporation has "continuous and systematic" contacts with the state. See Modern Mailers v. Johnson & Quin, Inc., 844 F. Supp. 1048, 1054 (E.D. Pa. 1994) (less than 0.5% of total sales insufficient); Allied Leather Corp. v. Altama Delta Corp., 785 F. Supp. 494, 498-99 (M.D. Pa. 1992) (approximately 1% of sales made to Pennsylvania residents insufficient); Derman v. Wilair Servs., Inc., 590 A.2d 317, 324 (Pa. Super.) (approximately 1.5%

---

[3] Docket No. 9.

[4] Docket No. 12. Plaintiff's briefs do not explicitly address general personal jurisdiction, but the information about sales percentages can only be relevant with respect to this issue, as it has no bearing on the question of specific personal jurisdiction because the sales have no connection to the mixing mill at issue in this case. Therefore, the Court will address the issue of general personal jurisdiction.

8

of business of aircraft maintenance corporation done with Pennsylvania residents insufficient), appeal denied, 600 A.2d 537 (Pa. 1991).

Plaintiff contends that Nakata's percentages are higher, arguing that Nakata made 11.9% of its total U.S. sales in Pennsylvania in 2004, 29.2% of its U.S. sales in Pennsylvania in 2006 and 2.7% of its U.S. sales in Pennsylvania in 2008. However, for a foreign corporation, percentages are based on Pennsylvania sales as compared to worldwide total sales, not Pennsylvania sales as a percentage of sales in the United States. See Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 614 (5th Cir. 2008) (referring to Canadian company's sales to Texas customers as a percentage of total global sales). Moreover, general jurisdiction is usually found "where a non-resident defendant makes a substantial number of direct sales in the forum, solicits business regularly and advertises in a way specifically targeted at the forum market." Strick Corp. v. A.J.F. Warehouse Distributors, Inc., 532 F. Supp. 951, 956 (E.D. Pa. 1982) (citing Schwilm v. Holbrook, 661 F.2d 12, 14 (3d Cir. 1981)). Plaintiff has cited to no such evidence and Nakata has asserted that the only direct sales it has made to Pennsylvania in the last ten years were parts for a kneader.

Plaintiff states that Nakata has provided documentation showing four separate transactions that took place in Pennsylvania: in 1999, 2004, 2006 and 2008, Nakata sold parts for a rubber kneader directly to West Pharmaceutical Services located in Lionville, Pennsylvania. (Pl.'s Supp. Br. at 3 & Ex. A.)[5] Plaintiff further contends an employee of Nakata repeatedly and continuously negotiated and corresponded with West Pharmaceuticals concerning these part sales. (Id. at 4 & Ex. B.) However, as Nakata has argued, these limited contacts do not represent

---

[5] Docket No. 23.

a "substantial number of direct sales in the forum" and are insufficient to establish general personal jurisdiction over Nakata in Pennsylvania. See Endless Pools, Inc. v. Wave Tec Pools, Inc., 362 F. Supp. 2d 578, 582 (E.D. Pa. 2005) (Texas pool manufacturer that hired a Pennsylvania resident to be a sales representative who contacted 4-6 customers in the Philadelphia region from his office in Pennsylvania–leading to at least one sale–and who used a company cell phone with a Pennsylvania area code did not have continuous and systematic contacts with the state).

In summary, Plaintiff has provided no basis upon which to conclude that Nakata has "continuous and systematic contacts" with Pennsylvania such that general personal jurisdiction can be asserted over it in this state.

Specific Personal Jurisdiction

Determining whether specific personal jurisdiction can be exercised over a defendant is claim specific. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001). In Remick, the Court of Appeals concluded that the district court in Pennsylvania had specific personal jurisdiction over an Indiana client and his Illinois agent with respect to his former attorney's breach of contract and tortious interference with contractual relations claims, but did not have specific personal jurisdiction over the attorney's defamation and misappropriation of image claims.

In Count I, Plaintiff alleges that Nakata was negligent in its design, manufacture, marketing, selling and distribution of the mixing mill and that it failed to provide proper or adequate warnings that it could suddenly pull fingers, hands and upper limbs into the mixing mill. For purposes of a non-intentional tort such as negligence, personal jurisdiction exists if the defendant has purposely directed its activities at the forum, if the litigation "arises out of or

relates to" at least one of those activities and if the exercise of jurisdiction comports with fair play and substantial justice. O'Connor, 496 F.3d at 317. In that case, the court held that specific personal jurisdiction could be exercised over a Barbados resort when a patron, who had been enticed back to the resort by multiple mailings and phone calls that included invitations to utilize the resort's spa treatments, was injured when he slipped and fell at the spa.

Nakata's design or manufacture of the mixing mill occurred in Japan and Plaintiff was injured in Pennsylvania and thus the requirements of § 5322(a)(4) could be met. However, the Court "cannot presume that jurisdiction is proper simply because the requirements of a long-arm statute have been met." Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 202 (3d Cir. 1998). Rather, the Court must still evaluate "whether the strictures of constitutional due process (i.e., minium contacts and notions of 'fair play and substantial justice') would be observed by asserting jurisdiction." Id. (footnote omitted).

With respect to the specifics of the mixing mill at issue in this case, Mr. Sakurai states that:

> The Kobe Uni-Drive Two Horizontal Mixing Mill at issue in this case was designed by Kobe Machinery Co., Ltd.
>
> The mechanical components for the Kobe Uni-Drive mixing mill (SN 5664) were sold by Kobe Machinery to International Rubber Co. in Louisville, Kentucky in 1972. International Rubber completed the mill by adding electrical components, drives and other parts acquired locally.
>
> Prior to 1982, International Rubber sold the mixing mill to Phillips Petroleum, whose headquarters were in Bartlesville, Oklahoma. [Phillips Petroleum merged with Conoco, Inc. in 2002 to form Conoco Phillips Company.]
>
> In 1982 the mill was sold by Phillips, directly or indirectly, to Dabsco Equipment, Inc., located in Clarksville, Tennessee.
>
> Dabsco, after reconditioning the mill, sold the mill to Mount Morris Tire

>Service in 1983.
>
>> Neither Mount Morris Tire Service nor Dabsco has ever been a customer of Nakata Engineering or Kobe Machinery.
>>
>> Nakata Engineering has provided no services or parts to Dabsco or Mount Morris Tire Service in connection or for use with the Kobe mixing mill.

(Sakurai Aff. ¶¶ 11-17.) Plaintiff has submitted no evidence to contest this testimony.

Thus, there is no evidence that Nakata sought out anyone in Pennsylvania to sell the mixing mill to. Rather, the mill was sold by Nakata's predecessor to International Rubber in Kentucky. Indeed, as Sakurai explains, the mill was sold three times over many years and Nakata's predecessor was involved only in the first sale in 1972. The fact that it eventually wound up in Pennsylvania was fortuitous and certainly not foreseeable by Nakata.

Plaintiff argues that Nakata was a party to another lawsuit in this Court as a result of injuries that another employee of Mt. Morris Tire Service suffered in an accident with another of its mixing mills. Carey v. Nakata Eng'g Co., Civ. A. No. 03-1772 (W.D. Pa. 2003). As the docket sheet in that case reflects, however, Nakata never responded to the complaint, default was entered against it and on March 6, 2006, Judge Schwab entered an order assessing damages against it, but Nakata never appeared in the case. Although Nakata's failure to appear waived any defenses it might have had in that case (including lack of personal jurisdiction), in this case Nakata has appeared and asserted this defense, as it has the right to do. Thus, the events of the Carey case do not have any bearing on this litigation. Plaintiff has provided no basis upon which specific personal jurisdiction over his negligence claim against Nakata can be exercised in Pennsylvania.

In Count II, Plaintiff alleges a products liability claim and asserts that personal

12

jurisdiction may be exercised based on the stream of commerce theory. Nakata argues that the stream of commerce theory does not apply in this case.

In Asahi Metal Industries Co., Ltd. v. Superior Court of California, 480 U.S. 102 (1987), the Supreme Court attempted to elucidate the elements of jurisdiction based on the stream of commerce theory. A California plaintiff who had been injured in a motorcycle accident filed a products liability suit in California against Chen Shin, the Taiwan corporation that manufactured the tire tube, contending that it was defective. Chen Shin impleaded Asahi, a Japanese corporation, seeking indemnification because Asahi manufactured the valve assemblies for Chen Shin's tire tubes. The plaintiff and Chen Shin settled, leaving only the indemnification action between Chen Shin and Asahi. Asahi contested personal jurisdiction, noting that it had not solicited any business in California and had no offices, agents or property there. It sold its tube assemblies to Chen Shin in Taiwan and had no control over the distribution system that brought its components into products eventually sold in California. The California Supreme Court found jurisdiction met because Asahi knew that some of its valve assemblies would be incorporated into tire tubes sold in California and benefitted indirectly from the sale of products incorporating the components in California.

As explained by the Court of Appeals in the Pennzoil case:

> The Supreme Court reversed that ruling, as all the Justices agreed that the exercise of personal jurisdiction over Asahi was dissonant with notions of "fair play and substantial justice." However, the Justices were divided on the level of minimum contacts necessary for a finding of jurisdiction under the stream-of-commerce theory. For this reason, the Court issued three different methods of analysis. Justice O'Connor, writing for a plurality of four, concluded that placement of a product in the stream of commerce must be accompanied by some "[a]dditional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum State." Asahi Metal, 480 U.S. at 112, 107 S.Ct. 1026. Justice O'Connor provided the following examples of such

13

conduct: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Id.

Justice Brennan, writing for another plurality of four, disagreed that a finding of such "additional conduct" was necessary. Noting that the stream of commerce does not consist of "unpredictable currents or eddies," Justice Brennan stated that "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." Id. at 117, 107 S.Ct. 1026 (Brennan, J., concurring). This premise led him to conclude:

> A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue *regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward the State.*

Id. (Brennan, J., concurring) (emphasis added).

Pennzoil, 149 F.3d at 204 (footnote and citation omitted).[6] Pennzoil sued Colelli, an Ohio corporation that manufactured solvents used by oil producers to reduce the buildup of wax in the shafts of their oil wells. Colelli never sold its product to any Pennsylvania resident, but much of the oil produced by Colelli's customers was delivered to Pennzoil's refinery in western Pennsylvania.

Pennzoil alleged that Colelli's solvent contained chemicals which damaged its refinery. Colelli moved to dismiss the suit for lack of personal jurisdiction. The Court of Appeals declined to embrace either plurality opinion from Asahi as the standard and instead evaluated the case under both rubrics. Specifically, it held that: 1) under Justice O'Connor's standard, Colelli's actions of sending solvent samples to Pennzoil's laboratories demonstrated an intent to

---

[6] Justice Stevens presented a third viewpoint in his concurrence. 480 U.S. at 121.

"design" a product which be used to serve the Pennsylvania refinery market and Cam Colelli had a number of telephone conversations with lab personnel at Pennzoil's refinery to discuss testing procedures and methodology and thus demonstrated "additional conduct" with Pennsylvania; and 2) Colelli satisfied Justice Brennan's less stringent standard when it placed its solvents into the stream of commerce and benefitted economically from the sale of the final product (crude oil) to refineries in Pennsylvania. Id. at 206-07.

Applying these standards to this case,[7] there is no evidence that Nakata designed the mixing mill for the market in Pennsylvania, advertised in Pennsylvania, established channels for providing regular advice to customers in Pennsylvania, or marketed the mill through a distributor who had agreed to serve as the sales agent in Pennsylvania. Thus, Justice O'Connor's standard is not satisfied.

Nor is Justice Brennan's less stringent standard satisfied, as there is no evidence that Nakata was aware that its mixing mill would be marketed in Pennsylvania and there is no evidence that it benefitted economically from the sale that brought the mill into Pennsylvania in 1983. See D'Jamoos v. Pilatus Aircraft Ltd., 2008 WL 1902193, at *5 (E.D. Pa. Apr. 30, 2008) (Pilatus manufactured a plane in Switzerland and sold it to a French company, which resold it to a Massachusetts company, which resold it to a Rhode Island company which owned the plane at the time of the crash, thus Pilatus had no connection to the plane's final location).

Plaintiff argues that "Nakata has admittedly availed itself of the Pennsylvania market by

---

[7] It is not at all certain that the stream of commerce theory applies to this situation, which does not involve a product moving through a distribution chain, Renner v. Lanard Toys, Ltd., 33 F.3d 277, 280 (3d Cir. 1994), but instead concerns a product that was resold and moved on three separate occasions. For purposes of this motion, the Court will assume that the theory could apply.

selling its products in the Commonwealth." (Docket No. 12 at 6-7.) However, he is citing to Nakata sales in more recent years, but these sales are not relevant because Plaintiff's cause of action is not related to them. Plaintiff is conflating the specific jurisdiction analysis–which looks only to the contacts out of which the litigation arises–with the general jurisdiction analysis–which allows for consideration of contacts other than those out of which the litigation arises. However, courts have "specifically rejected a party's reliance on the stream-of-commerce theory to support asserting general jurisdiction over a nonresident defendant." Purdue, 338 F.3d at 788-89 (quoting Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 216 (5th Cir. 2000)). Therefore, Plaintiff has not established that the stream of commerce theory applies to establish personal jurisdiction over its product liability claim.

In Count III, Plaintiff alleges a breach of warranty claim, a variety of breach of contract claim. "In determining jurisdiction over a breach of contract claim, we must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick, 238 F.3d at 256 (citation omitted). See also General Elec., 270 F.3d at 150 ("In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach.").

In Vetrotex CertainTeed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147 (3d Cir. 1996), Vetrotex, a Pennsylvania seller of fiber glass products, brought suit against Conglas, a California buyer of its products, and the Court of Appeals held that personal jurisdiction was lacking because:

> The only contacts that Conglas had with Pennsylvania consisted of some telephone calls and letters written to Vetrotex in Pennsylvania. However, this

Court has recognized that "informational communications in furtherance of [a contract between a resident and a nonresident] do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]."

Id. at 152 (quoting Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir. 1993)). The court distinguished other cases in which the nonresident defendant had actively solicited the contract or initiated the business relationship, sent payments into the forum state, or engaged in extensive post-sale contacts with the forum state. Id. at 152-53. In addition, the court refused to consider negotiations that occurred between Vetrotex and Conglas in previous contracts over a decade before, because for purposes of specific personal jurisdiction the only dealings between the parties that are relevant are those related to the disputed contract. Id. at 153.

In Remick, the court concluded that personal jurisdiction could be asserted over the breach of contract claim brought by a Pennsylvania attorney (Remick) against a former client (Manfredy) who had solicited Remick to represent him in Pennsylvania. The court noted that:

> Remick's contract claim is comparable to those distinguished in Vetrotex. According to Remick's affidavit, Manfredy sought Remick out by placing a telephone call to Remick's associate Resnick at their office in Philadelphia. This solicitation eventually resulted in the fee agreement between Remick and Manfredy, which Remick signed in, and Manfredy signed and returned to, Pennsylvania. The agreement noted that its formality was required by the Pennsylvania Rules of Professional Conduct, suggesting that Manfredy was receiving the benefit of Pennsylvania law under the agreement. In addition, at least one payment was sent by Manfredy to Remick at his Philadelphia office. Most of the services performed by Remick on behalf of Manfredy were conducted at Remick's Philadelphia office, and Manfredy certainly should have expected as much as he knew that Remick's home office is in Philadelphia.
>
> Finally, there were repeated "informational communications" during the course of the contractual relationship between Manfredy and Remick with Remick at his Philadelphia office, including the final communication–Manfredy's termination letter of March 2, 1998. See Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir.1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the

17

minimum contacts that support jurisdiction."). These facts as a whole involved more entangling contacts than the mere "informational communications" at issue in Vetrotex.

238 F.3d at 256. Finally, in General Electric, the court held that personal jurisdiction was properly asserted over a German corporation that, in its role of guaranteeing its subsidiary's contract with General Electric to manufacture diesel engines, made trips to Pennsylvania and assumed long-term obligations. 270 F.3d at 151-52.

Plaintiff has not explained how personal jurisdiction can be exercised over Nakata with respect to his breach of warranty claim. He has not cited any case that would exercise personal jurisdiction over a defendant in these circumstances.

Because Plaintiff has failed to make out a prima facie case of personal jurisdiction, the Court need not address whether fair play and substantial justice would render jurisdiction over Nakata unreasonable. Vetrotex, 75 F.3d at 153 n.9. However, as the Supreme Court decided Asahi on this basis, it is noted that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." 480 U.S. at 114. Although Plaintiff is a Pennsylvania resident and the injury occurred in Pennsylvania, these factors would have to be weighed against haling a Japanese corporation into Pennsylvania to defend itself in a foreign legal system based upon the fortuity of its product having arrived–after a series of transactions over which it had no control–in Pennsylvania. See Johnston, 523 F.3d at 615-17 (finding that exercising personal jurisdiction over a Canadian corporation would offend traditional notions of fair play and substantial justice); Benton v. Cameco Corp., 375 F.3d 1070, 1079-80 (10th Cir. 2004) (same).

For these reasons, it is recommended that the motion to dismiss for lack of personal jurisdiction, submitted on behalf of Defendant Nakata Engineering Co., Ltd. (Docket No. 8), be granted.

Within the time specified in the Notice of Electronic Filing, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: May 13, 2009